IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

2009 SEP 15 A 8:14

Rudy Saxon,

    Plaintiff,

v.

Michael J. Astrue, Commissioner
of the Social Security Administration,

    Defendant.

Criminal No. 6:08-1985-SB

**ORDER**



This is an action brought pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied Rudy Saxon's ("Saxon" or "the Plaintiff") claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The record includes a United States Magistrate Judge's Report and Recommendation ("R&R"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). In the R&R, Magistrate Judge William M. Catoe recommends that the Court affirm the Commissioner's final decision denying benefits. The Plaintiff filed timely objections to the R&R, and the Defendant filed a response to the objections. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within ten days after being served with a copy).

## BACKGROUND

### I. Procedural History

Saxon filed a claim for DIB and SSI on September 3, 2004, alleging disability beginning on August 7, 2004. The Commissioner denied his application initially and upon

reconsideration. Saxon timely filed a request for a hearing, and on November 8, 2006, Administrative Law Judge ("ALJ") Francis F. Talbot held a hearing, at which the Plaintiff, his attorney, his sister, and a vocational expert ("VE") appeared. On March 6, 2007, the ALJ issued a decision finding that Saxon was not under a disability as defined in the Social Security Act, as amended. Specifically, the Commissioner made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since August 7, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: lumbar and cervical degenerative disc disease, status post left total hip replacement, and schizophrenia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work. Specifically, the claimant can lift and carry no more than 10 pounds at a time, sit and stand for six hours in an eight-hour workday, and walk for two hours in an eight-hour workday. The claimant has additional restrictions of a sit/stand option; occasional climbing on ramps and stairs; no climbing of ladders, scaffolds, or ropes; occasional balancing, stooping, bending, crouching, and crawling; no hazardous environment; unskilled, low-pressure work with no contact with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 8, 1959 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).



8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 7, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 16-22.)

Saxon filed a timely request for a review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. On May 22, 2008, Saxon filed this action requesting judicial review of the Commissioner's final decision.

## II. Evidence Presented

As an initial matter, neither party objected to the R&R's summary of the evidence (including the medical evidence, the Plaintiff's statements and testimony, or the vocational testimony), and after a review of the record, the Court adopts this portion of the R&R as set forth below:

### A. Medical Evidence

The Plaintiff was born on May 8, 1959, and was 45 years old on the alleged onset date of disability and 47 years old at the time of the ALJ's decision. He has a high school education and previously worked on a farm mixing chemical fertilizer.

In 2002, the Plaintiff was diagnosed with necrosis in his left hip, which was

3

confirmed by an MRI, and he was referred to the orthopedics department at the Veterans Affairs Medical Center ("VAMC") in Charleston, South Carolina. The Plaintiff apparently did not follow up with the orthopedics department at that time, but he returned to the VMAC on June 4, 2004, again complaining of pain in his left hip. On July 19, 2004, x-rays revealed aseptic necrosis with collapse of the femoral head and joint space narrowing.

On October 5, 2004, the Plaintiff underwent a total left hip replacement at the VMAC. One week after surgery, he could ambulate using a walker without any assistance, and VAMC notes indicate that on October 14, 2004, the Plaintiff could perform weight-bearing activity as tolerated and that he was doing well in physical therapy. VAMC notes also indicate that by December 4, 2004, the Plaintiff was "doing well," sleeping through the night, and experiencing moderate pain "only with long walking." Hospital notes during the Plaintiff's recovery period document a history of alcoholism.

On November 22, 2004, state agency physician Dr. James Weston completed a residual functional capacity ("RFC") assessment, in which he opined that the Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for six hours in an eight-hour workday; could sit for about six house in an eight-hour workday; had limited ability to push/pull his lower extremities; and could climb, stoop, crouch, and crawl occasionally.

After he was discharged following his hip surgery, the Plaintiff participated in an outpatient substance abuse counseling program at the VMAC from December 14, 2004, through February 7, 2005. He regularly attended the group sessions and showed a moderate degree of participation. He also attended Alcoholics Anonymous meetings. Throughout the treatment program, the Plaintiff abstained from all mood-altering

4

substances, as confirmed by breathalyzer and urine testing.

On December 14, 2004, a mental status examination indicated that the Plaintiff's thought process was goal-oriented; that his thought control was normal; and that delusions and hallucinations were absent. The notes also indicated that the Plaintiff's cognitive functions were impaired.

On December 29, 2004, the Plaintiff reported that he occasionally hears voices, usually just calling his name, not commanding him. He also indicated that these symptoms had not caused him any functional impairment. Dr. Robert Ruby, a psychiatrist, noted that the Plaintiff showed signs suggesting schizophrenia; however, due to the Plaintiff's history of substance abuse, Dr. Ruby indicated that he would like to see the Plaintiff off all substances for a period of time before proposing a firm diagnosis. Laura Hancock, D.O., reiterated Dr. Ruby's conclusions on January 20, 2005, and prescribed bubproprion to assist with mood stabilization.

On January 20, 2005, vocation rehabilitation specialist Isadore Moore indicated on a check-off form that the Plaintiff did not have the following diagnoses: post-traumatic stress disorder, anxiety disorder, affective disorder, bipolar disorder, schizophrenia, psychosis, and adjustment disorder. Progress notes from January 24, 2005, indicate that the Plaintiff's strengths included punctuality, getting along well with others, following instructions, working with his hands, accepting criticism, and problem solving. The Plaintiff's barriers included limitations of lifting no more than 20 pounds and no bending or squatting for prolonged periods.

On January 27, 2005, the Plaintiff reported that his mood was a 7 on a scale of 1 to ten. Addiction therapist Denetria Norman noted that the Plaintiff's thought processes

were logical, linear, and connected, although she noted that his judgment and insight were limited. The Plaintiff's thought processes were again recorded as logical, linear, and connected prior to his discharge from the substance abuse program on February 7, 2005.

On July 8, 2005, Manhal Wieland, Ph.D., a state agency psychological consultant, completed a mental RFC assessment. Dr. Wieland did not find the Plaintiff's abilities markedly limited in any functional category. Dr. Weiland opined that the Plaintiff could attend work regularly, although occasionally missing a day due to his mental health; that he could relate appropriately to supervisors and coworkers; that he could perform simple tasks for at least two hours without special supervision; and that he could make simple work-related decisions and occupational adjustments. Dr. Wieland indicated that the Plaintiff would function better in a slower-paced, lower-stress work environment and may find work with the general public to be stressful.

On August 19, 2005, at the request of the Commissioner, the Plaintiff underwent a consultative examination by Eugene Eline, Jr., D.O. Dr. Eline indicated that the Plaintiff had been sober for seven months and did not report any alcohol use. He found that the Plaintiff should "be restricted from standing for greater than 20 minutes, continuous sitting for more than 20 minutes, continuous lifting more than 20 pounds, or walking more than 20 minutes continuous[ly]." The Plaintiff denied back pain and had a full range of motion in his cervical and lumbar spine; in addition, he had no deformities or misalignment in his cervical spine and no tenderness to palpation in his lower back. X-rays demonstrated a well-positioned, well-aligned total left hip replacement and arthroplasty; no evidence of any loosening, subsidence, or malposition; no heterotropic ossification; and symmetric limb lengths with no shortening or over-lengthening. Dr. Eline commented that typically patients

6

who have undergone a total hip replacement and arthroplasty are able to rejoin the work force. He opined that the Plaintiff's "hip looks great," and he noted that the Plaintiff did not appear to have suffered any complications from the hip replacement. Dr. Eline concluded that the Plaintiff could engage in sedentary to light activities.

On September 12, 2005, Dr. Robert Kukla completed a physical RFC assessment, in which he concluded that the Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift 10 pounds; stand and/or walk for six hours in an eight-hour work day; and sit for six hours in an eight-hour workday. Dr. Kukla noted that the Plaintiff's medically determinable impairments warranted limiting climbing, balancing, stooping, kneeling, crouching, and crawling to occasionally.

The Plaintiff sought treatment for hip and back pain on June 14, 2006. Radiology reports indicated no evidence of hardware failure, complication, or change of status in the Plaintiff's hip. X-rays of his back revealed no evidence of acute bony or alignment abnormality but did show marked degenerative disc disease at L5-S1 with minimal retrolisthesis. The Plaintiff returned to the VMAC on August 14, 2006, at which time he reported pain in his right shoulder and neck, but he indicated that his schizophrenia was not as severe even though he was not taking any medication. X-rays of the Plaintiff's right shoulder showed no fracture or other abnormalities. An MRI showed marked degenerative disc disease throughout his cervical spine with moderate bilateral foraminal stenosis.

On August 14, 2006, the Plaintiff also saw Dr. H. Biemann Othersen, III, at the VAMC Mental Health Clinic, at which time he denied using alcohol during the previous seven months and denied using cocaine for the previous one and one-half years. The Plaintiff reported some paranoia in crowds and hearing voices that say "help me" two to

7

three times per week. The Plaintiff denied manic symptoms, social phobia symptoms, and panic attack symptoms. Dr. Othersen noted that the Plaintiff's schizophrenic symptoms had responded well to Risperidone and prescribed it for him at a slightly reduced dose.

**B.     The Plaintiff's Statements and Testimony**

In a daily activities questionnaire completed on October 7, 2004, the Plaintiff responded that he lived alone in a mobile home; that family and friends helped him with housework and shopping; that he spent up to three hours per day on his hobbies, including watching television, playing the guitar, going to church, and drawing. He also reported that he was able to drive a car. The Plaintiff responded similarly to a questionnaire completed on April 6, 2005, except the Plaintiff indicated that he did not drive and that he completed his own grocery shopping twice per month. The Plaintiff indicated that he visited with friends or relatives about twice per month, either going out to eat or attending church.

On July 20, 2005, the Plaintiff stated that he watched television most of the day. He reported that he lived with his girlfriend and that they occasionally had guests over. He stated that his memory was pretty good and answered questions appropriately without signs of unclear thinking or cognitive problems.

At the hearing on November 8, 2006, the Plaintiff testified that his last job involved making fertilizer and mixing chemicals and that he had not worked since his hip replacement in 2004. The Plaintiff reported that his hip was a little better after surgery, but that it gave him problems when he tried to return to work seven weeks after surgery. He indicated that his hip hurt with bending or sitting for a long period of time and that he could walk 15 to 20 minutes and/or sit for about an hour before his hip began hurting. He reported that he spent four to five hours lying down each day. The Plaintiff also testified

8

that he experienced symptoms of schizophrenia, including hearing voices off and on, seeing shadows, and finding it difficult to be around crowds. He reported that he was still taking his medication, which helped with his symptoms of schizophrenia.

### C. Vocational Testimony

Vocational expert Dr. Arthur Schmitt testified that the Plaintiff's past relevant work as a chemical mixer[1] involved semi-skilled, medium exertional work. The ALJ asked Dr. Schmitt to consider a hypothetical person of the Plaintiff's age, education level, and work experience, with the following limitations: capable of sedentary work, needing a sit/stand option; capable of occasionally climbing ramps or stairs, but unable to climb ladders, scaffolds, or ropes; capable of occasionally balancing, stooping, bending, kneeling, crouching, or crawling; must avoid hazardous environments; and limited to low-pressure, unskilled jobs not requiring contact with the public. Dr. Schmitt testified that such an individual could perform the jobs of surveillance system monitor, coupon recycler, and addresser.[2] Dr. Schmitt indicated that his testimony was consistent with the DOT, and that to the extent it was not consistent, his answers were based on his experience.

## STANDARD OF REVIEW

### I. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Matthews v. Weber, 423 U.S. 261, 269 (1976). The

---

[1] See Dictionary of Occupational Titles ("DOT") #559.665-026.

[2] See #379.367-010, #290.587-010, and #209.587-010, respectively.

9

Court reviews de novo those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions.

## II. Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I. The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The

Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the anaylsis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At the second step, the ALJ found that the Plaintiff had the following "severe" impairments: lumbar and cervical degenerative disc

11

disease, status post left total hip replacement, and schizophrenia. Third, the ALJ found that these medically determinable impairments did not meet or medically equal any of the criteria listed in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. The ALJ then determined that the Plaintiff retained the RFC to perform sedentary work limited to: carrying and/or lifting no more than 10 pounds at a time; sitting and standing for six hours in an eight-hour workday; and walking for two hours in an eight-hour workday. The ALJ found that the Plaintiff had additional restrictions of a sit/stand option; occasional climbing on ramps and stairs; no climbing of ladders, scaffolds, or ropes; occasional balancing, stooping, bending, crouching, and crawling; no hazardous environment; unskilled, low-pressure work with no contact with the public. After finding that the Plaintiff could not perform his past relevant work, the ALJ found that the Plaintiff could perform other jobs that exist in significant numbers in the national economy.

## II. The Parties' Briefs

In his brief, the Plaintiff raised one issue, namely, that the ALJ erred by failing to consider the combined effect of Saxon's multiple impairments. State differently, the Plaintiff claimed that the ALJ failed to consider whether the Plaintiff's combined impairments were of equal significance to a listed medical impairment.

In response, the Commissioner asserted that substantial evidence supports the final decision, and more specifically, that the ALJ appropriately considered the combined effect of the Plaintiff's impairments and properly found that they did not meet or equal any listing.

## III. The Magistrate Judge's R&R and the Plaintiff's Objections

In the R&R, the Magistrate Judge rejected the Plaintiff's argument, finding that the

ALJ comprehensively reviewed all the evidence and properly considered the combined effect of the Plaintiff's impairments. The Magistrate Judge noted that the ALJ provided appropriate limitations to the Plaintiff's RFC based on all of the Plaintiff's impairments and that the ALJ incorporated these limitations into the hypothetical asked to the VE. In short, the Magistrate Judge reviewed the record and the ALJ's findings and found that the ALJ's decision was supported by substantial evidence.

In his objections, the Plaintiff asserts that the Magistrate Judge erred in finding that the ALJ properly considered the combined effect of the Plaintiff's impairments. Specifically, the Plaintiff objects to the Magistrate Judge's reliance on case law from other circuits and asserts that the law of this circuit was not followed in this case. The Plaintiff cites Alonzeau v. Astrue, which provides:

> Even if one could infer that the ALJ considered . . . the cumulative effect of all of Plaintiff's impairments from the ALJ's listing of various medical observations in his analysis of the Plaintiff's RFC, the ALJ failed to adequately explain his evaluation of any cumulative effects. As such, Plaintiff's claim should be remanded to the Commissioner for proper explanation of the ALJ's evaluation of the combined effect of Plaintiff's impairments with respect to whether Plaintiff's impairments meet a listing.

2008 WL 313786 (D.S.C. Feb. 1. 2008) (Seymour, J.) (unpublished) (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). The Plaintiff also objects to the Magistrate Judge's finding that it was appropriate for the ALJ to rely on a check-off form completed by a non-examining state agency consultant (in making the combination of impairments analysis).

The Commissioner filed a response to the Plaintiff's objections, asserting that the Plaintiff's objections merely reassert the same arguments that he made in his initial and reply briefs, and that the Magistrate Judge appropriately resolved these arguments.

13

## IV. The Court's Analysis

After a thorough review of the record, the Court agrees with the Plaintiff that the ALJ failed to adequately explain his evaluation of the combined effects of the Plaintiff's impairments.

In Walker, the Fourth Circuit Court of Appeals remanded the plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the impairments. 889 F.2d at 49-50. There, the ALJ found that the plaintiff suffered from several ailments and noted the effect of each impairment separately. The ALJ concluded that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4." Id. at 49. The Fourth Circuit rejected this conclusion as inadequate because the ALJ neither analyzed nor explained his evaluation of the cumulative effect of the claimant's impairments. Id. at 49-50. As the court noted, "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether such impairment if considered separately' would be sufficiently severe." Id. (quoting 42 U.S.C. § 423(d)(2)(c) and Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989)). In addition to *considering* the combined effect, the court noted that "the ALJ must adequately *explain* his or her evaluation of the combined effects of the impairments." Id. (citing Riechenbach v. Heckler, 808 F.2d 309 (4th Cir. 1985)) (emphasis added).

More recently, judges in the District of South Carolina have reiterated the importance of the ALJ providing an adequate explanation of the evaluation of the combined effects of the impairments. For example, in Lemacks v. Astrue, Judge Harwell adopted the Magistrate Judge's R&R, stating as follows:

14

While the ALJ proceeded to thoroughly discuss each of the plaintiff's severe impairments, in this case, he "simply noted the effect or noneffect of each and found that the claimant could perform light . . . work." Walker, 889 F.2d at 50 ( R. at 16-17.) Specifically, the ALJ progressed through each severe impairment individually, treating each in separate paragraphs, examining relevant evidence and ascribing functional limitations reasonably produced. Id. At no point does the ALJ make any conclusion about the corporate or compounding effect these impairments might have on the plaintiff's functional limitations, viewed together. The court in Walker, faced with the exact same treatment by the ALJ, found such treatment "fragmentize[d]" and remanded the case for "proper consideration." Walker, 889 F.2d at 50.

The Court is aware that the structure of the ALJ's analysis in this case is not uncommon. Most decisions reviewed by the Court profess to consider the combined effects of claimant's impairments, while actually analyzing each impairment separately. The ALJs may, in fact, be considering the combined effect, but analysis reflecting such consideration is seldom included. Walker requires adequate explanation and evaluation, see id.; in its absence, judicial review cannot be had. These decisions commit precisely the error rejected in Walker, and when a claimant brings them to the attention of the Court, they cannot be ignored. As recently as this year, this district has reaffirmed its commitment to enforcing the requirements of Walker that the ALJ make express his treatment of the combined effects of all impairments. See Alonzeau v. Astrue, 2008 WL 313786, at *3 (D.S.C. Feb. 1, 2008).

2008 WL 2510087 at *4 (D.S.C. May 29, 2008) (unpublished). Likewise, in Alonzeau, Judge Seymour adopted the R&R, finding that the ALJ failed to adequately explain his evaluation of the combined effects of the plaintiff's impairments. 2008 WL 313786 at *3. The court noted: "Even if one could infer that the ALJ considered the effect of obesity combined with Plaintiff's other impairments or the cumulative effect of all of Plaintiff's impairments from the ALJ's listing of various medical observations in his analysis of the Plaintiff's RFC, the ALJ failed to adequately explain his evaluation of any cumulative effects." Id.

Here, the ALJ summarily stated that the "claimant does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments

15

. . . ." Then, the ALJ considered the effect of the impairments individually. (Tr. at 17 (emphasis added)). What is missing from the ALJ's findings, however, is an *explanation* of his evaluation of the combined effect of the Plaintiff's impairments. And although it is possible to infer from the ALJ's review of the medical evidence and his RFC evaluation that he did in fact consider the combined effect of the Plaintiff's impairments (as demonstrated by the Magistrate Judge in the R&R), the Court finds that such an *inference* falls short of the required evaluation. Rather, as the Fourth Circuit has instructed, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50. Here, because the ALJ did not adequately explain his evaluation of the combined effects, the appropriate judicial review cannot be had and the Court cannot say whether substantial evidence supports the Commissioner's decision. Therefore, the Court finds that the Plaintiff is entitled to have his claim remanded for proper consideration.

## CONCLUSION

After a thorough review of the case, the Court declines to adopt the R&R (Entry 22). Instead, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the Court remands the matter to the Commissioner for further consideration and explanation of the combined effect of the Plaintiff's impairments.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

September 14, 2009
Charleston, South Carolina

## ADDENDUM

Should this remand result in the award of benefits, the Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*[3]

---

[3] This language was taken from <u>Stutts v. Astrue</u>, 489 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007).